| | |
|---|---|
| **United States of America**, | |
| v. | **Judgment** |
| **Brian I. Muleshe**, | |
| Defendant. | |

On April 8, 2015, the Government filed a Criminal Information against Defendant Brian I. Muleshe, charging him with violating North Carolina General Statute § 20-138.1, driving while impaired ("DWI"), as assimilated by 18 U.S.C. § 13(a). The undersigned magistrate judge conducted a bench trial on February 1, 2016. After reviewing the entire record, considering all of the testimony, reading each exhibit, and assessing the credibility of the witnesses, the court enters the following findings of fact and conclusions of law.[1] As explained below, the court finds that the Government failed to establish beyond a reasonable doubt that Muleshe was under the influence of an impairing substance while driving his vehicle. Because the Government has not met its burden of proof, the court adjudges Muleshe not guilty of the sole count of the Criminal Information.

**I.    Background**

In the early morning of October 26, 2014, Muleshe's vehicle approached Access Control Point 11 ("ACP-11") on Fort Bragg. Audio Tr. of Feb. 1, 2016 Bench Trial at 2:28:55–2:29:00. Richard Elliot, the supervisor for security at ACP-11, stopped the vehicle and asked Muleshe for

---

[1] To the extent any finding of fact should be designated as a conclusion of law, it should be considered a conclusion of law. Similarly, to the extent any conclusion of law should be designated a finding of fact, it should be considered a finding of fact.

his Department of the Defense identification. *Id.* at 2:28:30–47; 2:29:04–27. Because Muleshe was unable to find his identification card, Elliot asked him to move his vehicle to another lane so it did not block incoming traffic. *Id.* at 2:31:51–2:32:07. Muleshe complied. *Id.* When Elliot approached the vehicle to ask if Muleshe had found his identification, he noticed a strong odor of alcohol. *Id.* at 2:34:18–34. Because there were two other passengers in the vehicle, Elliot asked Muleshe to exit the vehicle in order to determine whether the odor was coming from Muleshe or the passengers. *Id.* Elliot determined that Muleshe smelled of alcohol and asked his supervisor, Lieutenant Robinson, to confirm his observation. *Id.* at 2:34:38–42; 2:34:58–2:35:15. Lieutenant Robinson agreed, and Elliot called the Military Police to investigate the possibility of a DWI. *Id.* at 2:34:58–2:35:15.

Officer Troy Looney, a civilian police investigator, responded to the dispatch. *Id.* at 2:47:54–2:48:01. When he arrived at ACP-11, he noticed that Muleshe was swaying from side to side, had red, watery eyes, was wearing a club wristband on his right wrist, and smelled mildly of alcohol. *Id.* at 2:49:07–46; 3:45:24–30. Looney then asked Muleshe where he was coming from, where he was going, and whether he had consumed any alcohol prior to driving. *Id.* at 2:50:04–10; 2:50:21–26. Muleshe replied that he was giving his friend a ride back from a club and that he had three alcoholic beverages earlier that night. *Id.* at 2:50:10–26. Looney then conducted a portable breath test and three Standard Field Sobriety Tests ("SFSTs"): the horizontal gaze nystagmus test ("HGN"), the walk-and-turn test, and the one-leg stand test. The portable breath test was positive for alcohol on Muleshe's breath. *Id.* at 3:31:48–55.

Looney first conducted the HGN test. Looney asked Muleshe if he wore contacts and whether he had any medical conditions. *Id.* at 2:55:06–23. Muleshe replied that he did wear contacts but did not have any medical conditions. *Id.* Looney then told Muleshe to stand with

2

his legs together, with his arms at his side, and to follow the tip of his finger with his eyes without moving his head. *Id.* at 2:59:57–3:00:20; 3:11:34–58. Looney checked to see whether Muleshe's pupils were equal in size, whether he had resting nystagmus, and whether his eyes tracked the same. *Id.* at 2:55:52–2:56:27. Noting no issues, Looney conducted the test. *Id.* at 2:56:27–37. Muleshe exhibited six out of six clues of intoxication and, contrary to Looney's instructions, moved his head three times while the test was being conducted. *Id.* at 2:55:00–02; 3:03:18–3:09:22; 3:11:34–58.

Next, Looney administered the walk-and-turn test using a lane line at the gate. *Id.* at 3:13:33–35. The walk-and-turn test consists of an individual taking nine heel-to-toe steps in a straight line, turning around in a prescribed manner, and then taking nine additional heel-to-toe steps in a straight line. *Id.* at 3:12:24–30. The officer administering the test looks for eight clues that indicate the individual performing the test is intoxicated: lack of balance during the instructions, starting the test before being told to do so, improper number of steps, missing heel-to-toe, stepping off the line, raising arms for balance, improper turn, or stopping while walking. *Id.* at 3:12:46–3:13:13. According to Looney, Muleshe exhibited four of the eight clues: he swayed side to side during the instructions and kept moving his foot even though he was instructed to stay still, he stopped while walking, he took 12 steps instead of 9, and he did an improper turn. *Id.* at 3:16:16–32.

Once Muleshe completed the walk-and-turn test, Looney administered the one-leg stand test. This test requires an individual to stand with his arms at his sides, to raise one leg six inches off the ground with the bottom of the foot parallel to the ground, and to count out loud while looking at the raised foot until the officer tells him to stop. *Id.* at 3:17:20–44. The officer administering the test looks for four clues that indicate that the individual performing the test is intoxicated: swaying, raising arms for balance, hopping, and placing the raised foot down. *Id.* at 3:16:53–3:17:01. Muleshe exhibited one clue: swaying side to side. *Id.* at 3:17:58–3:18:12.

3

Based upon Muleshe's performance on the SFSTs, the result of the PBT, and his observations of Muleshe, Looney believed that Muleshe had consumed a sufficient amount of alcohol to impair his mental or physical faculties. *Id.* at 3:32:21–26. Looney arrested Muleshe and another officer transported Muleshe to the law enforcement center. *Id.* at 3:33:33–37; 3:53:03–38. There, Looney advised Muleshe of the North Carolina implied consent provisions and asked him if he would provide a breath sample for a breathalyzer test. *Id.* at 3:34:47–58. Muleshe refused. *Id.* at 3:36:10–14.

Subsequently, the Government filed a Criminal Information against Muleshe, charging him with a violation of 18 U.S.C. § 13, assimilating North Carolina General Statute § 20-138.1, which prohibits a person from operating a motor vehicle upon a street, highway, or "public vehicular area . . . [w]hile under the influence of an impairing substance; or [a]fter having consumed sufficient alcohol that he [or she] ha[d], at any relevant time after the driving, a[ blood] alcohol concentration of 0.08[%] or more."

## II.  Analysis

### A.  Overview of the Charged Offense

Muleshe is charged with violating North Carolina General Statute § 20-138.1 ("DWI"), which provides in relevant part that "[a] person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State … [w]hile under the influence of an impairing substance." N.C. Gen. Stat. § 20-138.1(a)(1). Although a violation of § 20-138.1 is a state law crime, Muleshe is charged with a federal crime through the Assimilative Crimes Act, 18 U.S.C. § 13. Under the Assimilative Crimes Act, those who commit criminal acts on federal reservations are subject to prosecution under state law if there is no applicable federal law specifically prohibiting the criminal conduct. *United States v. Minger*, 976 F.2d 185, 187 (4th Cir. 1992). When a state law is assimilated under the

4

Assimilative Crimes Act, federal courts look to state law for the elements of the crime. *Id.* However, the federal law of evidence, not the state's law of evidence, governs the proceeding. *United States v. Van Hazel*, 468 F. Supp. 2d 792, 798 (E.D.N.C. 2006).

In order to prove Muleshe guilty of DWI, the Government must establish three elements beyond a reasonable doubt: (1) Muleshe was driving a vehicle, (2) he was driving that vehicle upon a street, highway, or public vehicular area on Fort Bragg Military Reservation, an area within the special maritime and territorial jurisdiction of the United States, and (3) at the time he was driving the vehicle, he was under the influence of an impairing substance. *See* N.C. Gen. Stat. § 20-138.1(a)(1); N.C.P.J.-Crim. 270.20A (2014); *see also* 18 U.S.C. § 13(a).

A person is under the influence of an impairing substance when he takes or consumes "a sufficient quantity" of an impairing substance such that there is "an appreciable impairment" of his mental or bodily faculties. N.C.P.J.-Crim. 270.20A (2014); *see also* N.C. Gen. Stat. § 20-4.01(48b). An impairing substance includes alcohol. N.C. Gen. Stat. § 20-4.01(14a). "The fact that a motorist has been drinking, when considered in connection with faulty driving or other conduct indicating an impairment of physical and mental faculties, is sufficient *prima facie*" evidence to show appreciable impairment. *State v. Norton*, 231 N.C. App. 75, 79, 712 S.E.2d 387, 390 (2011) (internal quotation marks omitted) (quoting *State v. Coffey*, 189 N.C. App. 382, 387, 658 S.E.2d 73, 76 (2008)). Only the third element—that Muleshe was under the influence of an impairing substance—is in dispute. Audio Tr. at 9:10:17–35 (parties stipulating that the events at issue in the trial occurred in the special maritime and territorial jurisdiction of the United States); 2:29:59–2:30:02 (testimony that Muleshe was driving the vehicle on the night in question).

5

B. Admissibility of Horizontal Gaze Nystagmus Test Results

The Government asks the court to admit Captain Timothy Tomczak of the Raleigh Police Department as an expert witness on SFSTs, including the HGN test, and to admit the results of Muleshe's HGN test. In *United States v. Van Hazel*, 468 F. Supp. 2d 792 (E.D.N.C. 2006), this court held that the HGN test is a scientific test requiring expert testimony and compliance with *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Company v. Carmichael*, 526 U.S. 137 (1999). *Van Hazel*, 468 F. Supp. 2d at 796–97. Thus, prior to the court considering the results of Muleshe's HGN test, the Government must "produce sufficient evidence of the reliability of the HGN test (including the correlation between nystagmus and intoxication)." *Id.* at 797.

Captain Tomczak is currently assigned to the Administrative Services Division of the Raleigh Police Department. *Notice of Expert*, Jan. 25, 2016, D.E. 19-1 at 2. Prior to his current position, Tomczak served as Lieutenant in the Office of Professional Standards, Lieutenant in the Special Operations Division, and District Lieutenant in the Field Operations Division. *Id.* at 2–3. He is a certified DWI Enforcement Expert and a certified Drug Recognition Expert ("DRE"). *Id.* at 4. Tomczak has completed many specialized trainings, including North Carolina Department of Health and Human Services' ("NC DHHS") DRE yearly updates, NC DHHS train-the-trainer drug impairment training for educational professionals, and the Institute of Police Technology and Management's medical foundations of visual systems testing. *Id.* at 5–10. He has also taught numerous courses, including DRE schools for the National Highway Traffic Safety Administration, SFST courses for the Raleigh Police Department, and SFST/DRE instructor courses at Wake Technical Community College. *Id.* at 10–20. He holds an associate's degree in criminal justice, a bachelor's degree in psychology and history, a master's degree in business

6

administration, and is currently working towards his juris doctorate. *Id.* at 4. Tomczak has testified twice as an expert witness in state court proceedings on issues related to HGN tests. *Id.* at 28–29.

The Government requested that the court recognize Tomczak as an expert in "standardized field sobriety testing." Audio Tr. at 9:34:18. When pressed by Defense Counsel, the Government specified that Tomczak's proposed area of expertise "includes HGN as part of the standardized field sobriety testing" and sought to have him testify as an expert to "the scientific information that he has reviewed as an instructor [regarding the] development of those tests[.]" *Id.* at 9:34:43.

Defense counsel contended that while Tomczak was well qualified to testify regarding the administration of SFSTs,[2] including the HGN test, he lacks the necessary qualifications to testify as to the reliability of the science behind those tests. *Id.* at 9:41:45–9:44:00. Although Tomczak has read numerous articles on the topic, the defense contends that reviewing literature, by itself, is not sufficient to qualify him as an expert on the scientific validity of the SFSTs. *Id.* at 9:44:00–9:44:28.

The Government responded that Tomczak is a very experienced instructor in all aspects of the SFST tests and that he has taught courses on the history and science of the tests. *Id.* at 9:44:43–9:45:04. It also contends that the science regarding the reliability of SFSTs is related to police work, and Tomczak is well versed in that work. *Id.* at 9:45:42–9:46:08. Additionally, the Government relies upon Tomczak's recognition as an expert on SFSTs by North Carolina's state courts on multiple occasions. *Id.* at 9:46:15. Thus, the Government contends, Tomczak should be allowed to testify regarding the science involved in HGN. *Id.* at 9:46:25.

---

[2] Although the issue is moot because of the Court's decision, the Court tends to agree that Tomczak is qualified in that area.

Rule 702 allows a court to recognize a witness as an expert in particular area based upon the witness's "knowledge, skill, experience, training, or education . . . ." Fed. R. Evid. 702. The plain text of the rule indicates that an expert may be qualified in any one of those five areas. *Garrett v. Desa Indus., Inc.*, 705 F.2d 721, 724 (4th Cir. 1983). If a proposed expert "is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee notes (2000); *see also United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007); *SMD Software, Inc. v. Emove, Inc.*, 945 F. Supp. 2d 628, 644 (E.D.N.C. 2013).

Here, the court agrees with Muleshe that the Government has not shown that Tomczak has the necessary qualification to testify to the validity of the science underlying the HGN test. The Government contends that Tomczak is an expert based on his experience. But it has failed to explain how his experience as an instructor on the administration of HGN test is sufficient to allow him to form reliable opinions regarding the reliability or the validity of the science underlying this test. *See United States v. Horn*, 185 F. Supp. 2d 530, 557 (D. Md. 2002) ("However skilled law enforcement officials, highway safety specialists, prosecutors and criminologists may be in their fields, the record before me provides scant comfort that these communities have the expertise needed to evaluate the methods and procedures underlying human performance tests such as the SFSTs."). As a result, the Government failed to meet the second part of the test above by showing "why [the proposed expert witness'] experience is a sufficient basis for the opinion . . . ." Fed. R. Evid. 702 advisory committee notes (2000).

Moreover, although Tomczak has testified in North Carolina state court as an expert on issues related to HGN testing, this experience is of limited value because the North Carolina
8

Rules of Evidence have eliminated "the need for the State to prove that the HGN testing method is sufficiently reliable." *State v. Smart*, 195 N.C. App. 752, 756, 674 S.E.2d 684, 686 (2009). It is also relevant to note that North Carolina has only relatively recently begun evaluating expert witnesses under the *Daubert* standard, *State v. McGrady*, -- N.C. --, 787 S.E.2d 1, 5 (2016) ("We hold that the 2011 amendment adopts the federal standard for the admission of expert witness testimony articulated in the *Daubert* line of cases."); so it is unclear whether Tomczak, who last testified as an expert witness on HGN issues in 2009, Ex. 1 at 29, would have qualified under the more exacting federal standard. Finally, the Government did not specify the exact nature of Tomczak's expert testimony in state court, so it is unclear whether he was qualified as an expert on issues of administration of the HGN test or the science behind it.

In light of the Government's failure to satisfy the requirements of Rule 702, the court will not consider Tomczak's testimony regarding the scientific reliability of the HGN test or the connection between nystagmus and intoxication. Therefore, the court will find that the Government failed to satisfy the *Daubert* standard in this case with respect to HGN testing and will not consider evidence regarding Muleshe's performance on that test in determining his guilt or innocence.

### C. Discussion of Admissible Evidence Presented at Trial

As discussed in more detail below, there is insufficient evidence to establish beyond a reasonable doubt that Muleshe was under the influence of an impairing substance on the night in question. There was no evidence that Muleshe was driving erratically. In fact, Elliot did not suspect a possible DWI until he approached the vehicle and smelled alcohol. Although the vehicle (which contained two people in addition to Muleshe) smelled strongly of alcohol, Officer

9

Case 5:15-mj-01409-RN   Document 25   Filed 09/12/16   Page 9 of 11

Looney testified that Muleshe only smelled mildly of alcohol. Similarly, although Muleshe had watery, bloodshot eyes, there was no indication that his eyes were glassy.

As for the SFSTs, Muleshe exhibited a total of five out of twelve clues of intoxication: four out of eight clues on the walk-and-turn test and one out of four clues on the one-leg stand test. Two of those clues were because Muleshe swayed noticeably during the instructional portion of the walk-and-turn test and during the completion of the one-leg stand test. However, Muleshe was able to complete both SFSTs without losing his balance. On the walk-and-turn test he made heel-to-toe contact on all steps, he did not step off of the line, and he kept his arms at his side. On the one-leg stand test he kept his foot six inches off of the ground for the required amount of time and did not use his arms for balance.

Muleshe did refuse to submit a breath sample for a breathalyzer test, which is substantive evidence of driving while impaired. *United States v. Van Hazel*, 468 F. Supp. 2d 792, 798 (E.D.N.C. 2006). However, a refusal to submit a breath sample is only one piece of evidence and it is not given more weight than other pieces of evidence. *See United States v. Rios*, No. 5:12-MJ-01742-JG-1, slip op. at *3 (E.D.N.C. July 17, 2013) ("This evidence [of defendant's refusal to submit to an intoxilyzer test], *together with the other evidence* . . . establishes beyond a reasonable doubt that [defendant] drove while under the influence of alcohol, an impairing substance." (emphasis added)); *Van Hazel*, 466 F. Supp. 2d at 799 (including refusal to take a breathalyzer test in a list of ten pieces of evidence showing defendant's guilt). Muleshe's refusal to submit a breath sample is evidence supporting the Government's contention that he was appreciably impaired, but it is not, by itself, dispositive.

When considering all of the admissible evidence presented at trial, there is some evidence that Muleshe was appreciably impaired when operating a motor vehicle, but not sufficient evidence to establish proof beyond a reasonable doubt. There is no evidence that Muleshe had

10

difficulty operating his vehicle. Similarly, Muleshe did not lose his balance on either the walk-and-turn test or the one-leg stand test. Finally, Muleshe's refusal to submit to an intoxilyzer test does support the Government's case, but that fact is not dispositive. Therefore, the court concludes that the Government has not proved beyond a reasonable doubt that Muleshe operated a motor vehicle while under the influence of an impairing substance and finds Muleshe not guilty of the sole count of the Criminal Information.

### III.     Conclusion

For the reasons discussed above, the court finds that the Government has failed to show beyond a reasonable doubt that Muleshe violated North Carolina General Statute § 20-138.1. Therefore, Muleshe is adjudged not guilty of the sole count of the Criminal Information. The Clerk of Court is directed to close this case.

Dated: September 12, 2016

*Robert T. Numbers II*

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE